# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | |
|---|---|
| MEGAN MILLER, | ) |
|     Plaintiff, | ) CIVIL COMPLAINT |
| | ) |
| | ) CASE NO. 1:18-cv-266 |
| v. | ) |
| | ) JUDGE TIMOTHY BLACK |
| ABILITY RECOVERY SERVICES, LLC | ) |
| | ) MAGISTRATE JUDGE |
|     Defendant. | ) KAREN L. LITKOVITZ |
| | ) |
| | ) **JURY DEMAND** |

## PLAINTIFF'S MOTION FOR A DEFAULT JUDGMENT

Now comes Plaintiff to respectfully move this Court for a default judgment against Defendant Ability Recovery Services, LLC.  As explained in the Memorandum, Defendant has not answered, and a default judgment is justified.  The Court should thus enter a default judgment against ARS in the amount of $21,052, representing $1,000 in statutory damages under the FDCPA; $10,500 under the TCPA; $2,200 under the CSPA; and $7,352 in attorney fees.

                                                    Respectfully Submitted,

Dated:  June 6, 2018

                                                    By:  s/ Jonathan Hilton

                                                    Jonathan Hilton (0095742)
                                                    HILTON PARKER
                                                    10400 Blacklick-Eastern Rd NW, Ste. 110
                                                    Pickerington, OH 43147
                                                    Tel: (614) 992-2277
                                                    Fax: (614) 427-5557
                                                    jhilton@hiltonparker.com

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | |
|---|---|
| MEGAN MILLER, on behalf of herself, | ) |
| | ) CIVIL COMPLAINT |
| Plaintiff, | ) |
| | ) CASE NO. 1:18-cv-266 |
| v. | ) |
| | ) JUDGE TIMOTHY BLACK |
| ABILITY RECOVERY SERVICES, LLC | ) |
| | ) MAGISTRATE JUDGE |
| Defendant. | ) KAREN L. LITKOVITZ |
| | ) |
| | ) **JURY DEMAND** |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A DEFAULT JUDGMENT

Defendant Ability Recovery Services, LLC ("ARS") has adopted a nationwide strategy of violating consumer protection statutes and then allowing defaults to be entered against it in individual (non-class-action) cases. This Court should exercise its discretion to enter a default judgment against ARS because otherwise, Plaintiff will have no recourse against ARS for its unlawful activities. The Court may, in its discretion, either hold a hearing or determine damages based on these papers.

**I.   BACKGROUND.**

In the past year, ARS has been named a defendant in at least 18 other cases, and it has failed to timely file an answer in at least eight of them. (Declaration of Jonathan Hilton ("Hilton Decl.") ("Exhibit A"), Pacer Search Results and Dockets ("Exhibit B")) (showing untimeliness in the cases *Ayres*, *Bankhead*, *Baum*, *Brown*, *Geary-Rothenberg*, *Holley*, *Marshall*, and *Nelson*). Defendant has often allowed default judgments to be entered against it. (*Id.*) This case is no different.

[ 1 ]

On April 14, 2018, Plaintiff filed a Complaint against ARS alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), the Telephone Consumer Protection Act ("TCPA"), and the Ohio Consumer Sales Practices Act ("CPSA"). A process server served the Summons and Complaint upon ARS's registered agent for Ohio on April 23, 2018. (Doc. #3.) Around May 3, 2018, a compliance officer at ARS contacted Plaintiff's counsel regarding this case. (Hilton Decl. at ¶ 2.)

On May 15, 2018, Plaintiff filed for an entry of default. (Doc. #5.) The Clerk issued the entry of default on May 17, 2018, and Plaintiff's counsel emailed a courtesy copy of the entry to Maureen Lynott, a compliance officer at ARS, that same morning. (Hilton Decl. at ¶ 3.) In response, ARS has provided its call records and disputed the number of calls it made to Plaintiff, but it has not otherwise disputed the core factual allegations in the Complaint. (*Id.* at ¶ 6.) Those allegations include, *inter alia*, that:

- Defendant sought to recover $226.50 for a medical debt that Plaintiff had already paid. Further, Defendant could provide verification for only $217.50.

- Defendant called Plaintiff's cell phone using pre-recorded voices (and voicemail messages) and an autodialer.

- Plaintiff never consented to this activity.

- Defendant threatened to "hit" Plaintiff's credit report "again" if Plaintiff did not pay.

- Defendant has, through non-lawyer agents, instructed Plaintiff that the legal burden of proof is on her to prove that she does not owe the debt in question.

(*See* Complaint, Doc. #1, ¶¶ 4–26, PageID #2–4.)

[2]

In her Complaint, Plaintiff alleged that ARS violated federal and state consumer protection laws in the following ways:

1. Intentionally harassing a debtor through repeated phone calls in violation of the FDCPA and the CSPA. (Compl. ¶¶ 32–34, 66–78.)

2. Misrepresenting the character, amount, or legal status of a debt in violation of the FDCPA and CSPA. (Compl. ¶¶ 35–38, 66-78.)

3. Threatening illegal or unintended actions (with respect to Plaintiff's credit report) in violation of the FDCPA and CSPA. (Compl. ¶¶ 39–40, 66–78.)

4. Threatening to communicate false credit information in violation of the FDCPA and CSPA. (Compl. ¶¶ 41–42, 66–78.)

5. Using false representations or deceptive means to collect a debt (including stating that the burden of proof was on Plaintiff to establish she did not owe the debt) in violation of the FDCPA and CSPA. (Compl. ¶¶ 43–46, 66–78, 84–88.)

6. Attempting to collect an amount not owed (including an unauthorized fee) in violation of the FDCPA and CSPA. (Compl. ¶¶ 47–51, 66–78.)

7. Making calls using a pre-recorded voice to Plaintiff's cell phone (including leaving pre-recorded voicemail messages) in violation of the TCPA and CSPA. (Compl. ¶¶ 52–58, 66–72, 79–83.)

8. Making calls using an autodialer in violation of the TCPA and CSPA. (Compl. ¶¶ 59–65, 66–72, 79–83.)

For these violations, Plaintiff prayed for statutory damages, actual damages, costs, and attorney fees. (Doc. #1, PageID # 13.)

## II. ARGUMENT.

The Court should enter a default judgment in Plaintiff's favor and award Plaintiff statutory damages, costs, and attorney fees for ARS's unlawful conduct.

### A. The Court Should Enter a Default Judgment.

"When considering whether to enter a default judgment, a court should take into account: 1) possible prejudice to the plaintiff; 2) the merits of the claims; 3) the sufficiency of the complaint; 4) the amount of money at stake; 5) possible disputed material facts; 6) whether the default was due to excusable neglect; and 7) the preference for decisions on the merits." *Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002) (citing *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)). Here, the balance of the factors weighs in favor of granting a default judgment.

#### 1. *Plaintiff Will Be Prejudiced in the Absence of a Default Judgement.*

As explained above, ARS often allows default judgments to be entered against it. Unless this Court enters a default judgment against ARS, Plaintiff will have no mechanism for enforcing her rights under federal and state consumer law, resulting in prejudice to her. This factor thus weighs in favor of granting a default judgment.

#### 2. *Plaintiff's Claims Are Meritorious.*

"On a motion for default judgment, allegations of fact in the complaint are taken as true unless they are contradictory on the face of the document." *Brown v. Halsted Fin. Servs., LLC*, No. 3:12-cv-308, 2013 U.S. Dist. LEXIS 26144, at *1 (S.D. Ohio Feb. 26, 2013). Thus, Plaintiff's allegations are deemed admitted, and ARS is liable on all counts.

[ 4 ]

Nevertheless, even if ARS *had* defended itself in court (which it did not), Plaintiff would still have succeeded on the merits on her FDCPA and TCPA claims. As explained below, Plaintiff's CSPA claims are predicated on violations of the FDCPA and TCPA; thus, her CSPA claims would also have succeeded.

**FDCPA Claims.** Plaintiff alleges various violations of the FDCPA, and some of these are easily substantiated. *First*, correspondence from ARS shows that it attempted to charge $226.50 for a medical debt, but it could only provide verification for $217.50. (Letter from ARS ("Exhibit C").) Thus, Plaintiff's 15 U.S.C. § 1692(e)(2) claim for a false statement regarding the amount of the debt is easily established.

*Second*, Plaintiff has substantiated at least seven phone calls by providing her phone records. (Plaintiff's Phone Records ("Exhibit D").) Defendant's phone records, obtained through informal discovery, are similar. (ARS Phone Records ("Exhibit E").) These records show that on February 6, 2018, ARS called Plaintiff twice within a two-minute period, thus causing her phone to ring "continuously" in violation of 15 U.S.C. § 1692d(5). Further, Plaintiff answered at least five calls, indicating that Defendant engaged Plaintiff in conversation "repeatedly" in violation of 15 U.S.C. § 1692d(5). Defendant's intent to annoy or harass Plaintiff is an allegation in the Complaint that should be accepted as true on a motion for a default judgment.

Lastly, if ARS had defended itself in court, Plaintiff would have obtained all of ARS's call recordings in discovery to fully substantiate her other FDCPA claims (such as the unlawful threat to Plaintiff's credit report and attempting to deceive her as to the law). (*See* ARS Website ("Exhibit F") (stating that ARS records all calls).)

[ 5 ]

**TCPA Claims.** Plaintiff's allegation that ARS used an autodialer is substantiated through ARS's own website. (Exh. F (explaining the techniques used by ARS, including "Automated Dialers").) Further, Plaintiff has provided her counsel with an audio recording of a pre-recorded voicemail message left for her. (Hilton Decl. at ¶ 8.) If desired, Plaintiff's counsel will play this audio recording at a Rule 55(b)(2) hearing.

This evidence would also have been sufficient to show that ARS committed "knowing" or "willful" violations of the TCPA, entitling Plaintiff to treble damages. For instance, ARS knows that is uses autodialers because it so indicates on its own website. ARS also must know that it leaves pre-recorded voicemail messages because it has designed and implemented such messages. *See, e.g.*, *Charvat v. Ryan*, 879 N.E.2d 765, 770 (Ohio 2007) ("We hold that to establish a knowing violation of the TCPA for an award of treble damages, a plaintiff must prove only that the defendant knew that it acted or failed to act in a manner that violated the statute, not that the defendant knew that the conduct itself constituted a violation of law."). Because Plaintiff's claims are meritorious, this factor weighs in favor of granting a default judgment.

        3.     *The Complaint is Amply Sufficient.*

The Complaint meticulously states claims under the FDCPA, TCPA, and CSPA, citing the statutes and case law establishing each cause of action. (Compl. ¶¶ 27–88.)

        *a.*     ***The Complaint States a Claim under the FDCPA.***

"In order to establish a claim under the FDCPA, the following elements must be present: (1) plaintiff is a 'consumer' as defined by the FDCPA; (2) the 'debt' must arise out of transactions that are 'primarily for personal, family or household purposes'; (3)

[ 6 ]

defendant is a 'debt collector' as defined by the FDCPA; and (4) defendant must have violated one of the specific statutory prohibitions regarding debt collection communication and/or activity." *Wallace v. Manley Deas Kochalski*, LLC, No. 3:13-CV-00031-H, 2013 U.S. Dist. LEXIS 92956, at *6 (W.D. Ky. July 1, 2013) (citing *Wallace v. Wash. Mut. Bank*, 683 F.3d 323, 326 (6th Cir. 2012)). Plaintiff has pled these elements at length and in detail. (Compl. ¶¶ 27–51.)

### b. The Complaint States a Claim Under the TCPA.

"In order to establish a prima facie TCPA case for calls made to a cellular phone, Plaintiff must show that: '(1) a call was placed to a cell or wireless phone; (2) by the use of any automatic dialing system and/or leaving an artificial or prerecorded message, and (3) without prior consent of the recipient.'" *Currier v. PDL Recovery Grp., LLC*, No. 14-12179, 2017 U.S. Dist. LEXIS 25240, at *20 (E.D. Mich. Feb. 23, 2017). Plaintiff alleged that ARS made calls to her cell phone; that it used an autodialer and pre-recorded messages; and that she never provided prior consent. (Compl. ¶¶ 59–65.) Further, courts have held that "debt collection calls are subject to TCPA liability." *Jordan v. Nationstar Mortg. LLC*, No. 14-cv-00787-WHO, 2014 U.S. Dist. LEXIS 148844, at *38 (N.D. Cal. Oct. 20, 2014). Thus, the Complaint alleges TCPA violations.

### c. The Complaint States a Claim Under the CSPA.

The CSPA, at R.C. 1345.09(B), creates a private right of action for consumers:

> Where the violation was an act or practice determined by a court of this state to violate section 1345.02 . . . of the Revised Code and committed after the decision containing the determination has been made available for public inspection . . . the consumer may . . . recover . . . two hundred dollars.

[ 7 ]

Here, Plaintiff states a claim for statutory damages under the CSPA because she (1) alleges that the Defendant violated R.C. 1345.02 and (2) identifies prior decisions condemning Defendant's conduct that were made available for public inspection. R.C. 1345.02 states that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction."

**ARS is a "Supplier."**  ARS is a "supplier" because it is a debt collector. *Taylor v. First Resolution Inv. Corp.*, 72 N.E.3d 573, 600 (Ohio 2016).

**ARS Committed "Unfair" or "Deceptive" Acts.**  ARS committed "unfair" and "deceptive" acts because it violated the FDCPA and TCPA. It is established that "any violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice in violation of R.C. § 1345.02 and/or § 1345.03." *Taylor v. First Resolution Invest. Corp.*, 148 Ohio St.3d 627 (Ohio 2016) (citing *Kelly v. Montgomery Lynch & Assocs., Inc.*, No. 1:07-CV-919, 2008 WL 1775251, at *11 (N.D. Ohio Apr. 15, 2008)). Thus, as a general rule, an FDCPA violation also constitutes a CSPA violation.

The Sixth Circuit, prior to *Taylor*, cautioned that courts should not "simply assume that the two statutes are coterminous." *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 261 (6th Cir. 2014). In *Slorp*, however, the issue was whether mortgage servicing—which fell within the ambit of the FDCPA—constituted a "consumer transaction" under the CSPA. *Id.* at 260. Mortgage servicing was statutorily exempted from the CSPA, so the CSPA did not apply. *Slorp* is thus distinguishable because here, as explained below, the only potentially relevant exception CSPA coverage—the physician exemption—does not apply.

[ 8 ]

As one Court put it, "[a]lthough the types of *transactions* that the OCSPA and the FDCPA regulate are not always co-extensive (the OCSPA is much broader), courts in this Circuit have generally interpreted the Ohio statute and the FDCPA as prohibiting the *same acts*." *Munger v. Deutsche Bank*, No. 1:11-CV-00585, 2011 WL 2930907, at *20 (N.D. Ohio July 18, 2011) (emphasis added). Because debts owed to hospitals (such as this one) arise from "consumer transactions" that are covered by the CSPA (as explained below), ARS's violations of the FDCPA constitute CSPA violations.

Further, ARS's violations of the TCPA were also "unfair" and "deceptive" acts. "A violation of the TCPA is not by itself proof of a violation of the OCSPA." *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 965 (C.D. Ill. 2017) (citing *Culbreath v. Golding Enterprises, L.L.C.*, 872 N.E.2d 284, 291 (Ohio 2007)). However, an "unfair" act that violates the TCPA *does* violate the CSPA, and using pre-recorded voices is an "unfair" activity due to the injury caused to consumers. *Dish Network*, 872 N.E.2d at 291. Likewise, the use of an autodialer injured Plaintiff because it allowed ARS to call her repeatedly over an alleged debt (which Plaintiff had already paid) that was only $217.50—in other words, ARS was able to use technology to create a low-cost system to attempt to annoy and aggravate Plaintiff into paying a debt she did not even owe. This behavior was thus "unfair" and violates the CSPA.

**The Acts Were in Connection with a "Consumer Transaction."** ARS's acts were committed in connection with a "consumer transaction" because it was collecting on a medical debt. *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 809 (S.D. Ohio 2006) (debt collector, by attempting to collect on a medical debt, was committing acts in

[ 9 ]

connection with a "consumer transaction"). Although a narrow exception to the CSPA exists for physicians, even if ARS had appeared and raised this exception, it would have lost on the merits—as shown by Exhibit C, the alleged creditor was Mercy Hospital, and hospitals are not exempted. *Id.*

**Prior Decisions Put ARS "on Notice" of the Violation.** Lastly, to state a claim for statutory damages under the CSPA, the Complaint must allege that prior decisions put the Defendant on notice of its violation. Here, with respect to the FDCPA claims, the Complaint cited *Kelly v. Montgomery Lynch & Assocs., Inc.*, No. 1:07-CV-919, 2008 WL 1775251, at *11 (N.D. Ohio Apr. 15, 2008) as proof that Defendant was on notice. (Compl. ¶ 74.) The *Kelly* case was made available on April 22, 2008 for public inspection by the Ohio Attorney General in the Public Inspection File at PIF #2653. PIF #2653, *available at* http://opif.ohioattorneygeneral.gov/opifimages/PIF2653.pdf.

With respect to the TCPA claims, ARS was also on notice. The Complaint, at ¶ 79, cited case law for the proposition that "Ohio courts have found that a violation of the TCPA also results in a violation of R.C. 1345.02 of the Ohio CSPA." *Tower City Title Agency, Inc. v. Phillips*, Case No. CV-568191, 2008-Ohio-957, ¶ 5 (Ohio Ct. App. 2008). The *Tower City* case was made available on March 12, 2008 for public inspection by the Ohio Attorney General in the Public Inspection File at PIF #2641. PIF #2641, *available at* http://opif.ohioattorneygeneral.gov/opifimages/PIF2641.pdf. Thus, the Complaint adequately alleges claims under the FDCPA, TCPA, and CSPA.

[ 10 ]

    4.  *The Amount of Money at Stake.*

With respect to the stakes, the Court should bear in mind that ARS has adopted defaulting in consumer law cases across the country as part of its overall litigation strategy. Presumably, ARS believes that defaulting in non-class-action cases is more cost effective than defending itself. The Court should thus weigh this factor in Plaintiff's favor because, in choosing to default, ARS has taken a calculated risk.

    5.  *The Disputed Facts are Minimal and Easily Resolved in Plaintiff's Favor.*

Plaintiff's counsel is aware of only one factual issue that ARS disputes. ARS claims that it only placed two calls to Plaintiff's cell phone. However, ARS's own call logs illustrate that it placed a total of nine calls. Two were placed to Plaintiff's husband's cell phone, which is assigned to a number ending in 7965, and Plaintiff does not contend she is entitled to pursue damages for those calls in this suit. The remaining seven calls were placed to Plaintiff. There are no other known factual disputes, so this factor weighs in favor of entering a default judgment.

    6.  *The Default Is Not Due to Excusable Neglect.*

"A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer." *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987). Here, ARS has actual notice. Further, when Plaintiff's counsel sent ARS a copy of the Clerk's Entry of Default, ARS did not respond by stating that it had made an oversight or that it needed more time to hire an attorney. (Hilton Decl. at ¶ 7.) Lastly, given that ARS has defaulted multiple times in the past year, it is aware of the possibility of a default judgment being entered against it. ARS's calculated

choice to default is therefore not the product of excusable neglect, and this factor weighs in Plaintiff's favor.

### 7. *Plaintiff Would Win This Case on the Merits.*

Although there is a policy presumption that cases should be decided on the merits, as explained above, Plaintiff would likely win on the merits regardless. Further, although ARS has had ample opportunity to raise additional issues of fact with Plaintiff's counsel, it has not done so. Lastly, the policy of deciding cases on the merits should be of reduced importance here because ARS is making a calculated business decision to default. Therefore, the Court should weigh this factor as neutral. On balance, then, the factors weigh in strongly favor of granting a default judgment.

### B. <u>The Court Should Award Damages under the FDCPA, TCPA, and CSPA.</u>

The default judgment should include all amounts to which Plaintiff is entitled. This includes $1,000 in statutory damages under the FDCPA, plus attorney fees; $500 in statutory damages per call under the TCPA, trebled for willful or knowing violations; and $200 per call plus attorney fees under the CSPA.

### 1. *Plaintiff Should Receive $1,000 and Attorney Fees under the FDCPA.*

The Court may award statutory damages of up to $1,000 for a violation of the FDCPA. 15 U.S.C. § 1692(k)(a)(2)(A). The Court should consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. 1692(k)(b)(1). Here, taking the allegations in the Complaint as true, Defendant committed numerous FDCPA violations, indicating a complete lack of compliance.

Further, ARS's collection tactics were aggressive: When Plaintiff explained that she had already paid the debt, ARS responded that "you still have to pay me"; threatened to unlawfully damage Plaintiff's credit; and attempted to deceive her into believing the burden of proof was on her to prove she did not still owe the debt. (Compl. ¶¶ 20–24.) These collection activities are representative of those that Congress sought to abolish by passing the FDCPA. As a result, the "nature" of the noncompliance weighs in favor of a high award.

Lastly, ARS's noncompliance was intentional. For instance, when ARS threatened to "hit" Plaintiff's credit report "again," it was attempting to scare Plaintiff into paying the alleged debt. As a result, Plaintiff has suffered aggravation, emotional distress, and confusion as to her legal rights. (Compl. ¶ 26.) Thus, awarding the full $1,000 is justified.

Plaintiff should also receive her attorney fees. 15 U.S.C. § 1692k(a)(3). The Court should award a reasonable fee, which is one that is "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Grier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). Determining a reasonable fee begins with calculating the lodestar, which is the product of "a reasonable hourly rate" and "the number of hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

"Attorney fees are generally calculated according to the prevailing market rates in the relevant community." *Mohn v. Goll*, No. 4:15CV0476, 2016 U.S. Dist. LEXIS 43866, at *5 (N.D. Ohio Mar. 31, 2016) (internal quotation marks omitted). "The court

considers the market rate that lawyers of comparable skill and experience can reasonably be expected to command within the venue of the court of record." *Whaley v. Asset Mgmt. Servs. Grp., LLC*, No. 2:16-cv-375, 2016 U.S. Dist. LEXIS 146202, at *6 (S.D. Ohio Oct. 21, 2016) (citing *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)). "Evidence of rates awarded in previous similar cases can be considered as evidence of the market rate." *Whaley*, 2016 U.S. Dist. LEXIS 146202, at *6.

Here, Plaintiff's counsel requests an hourly rate of $250 per hour for attorney time and $100 per hour for all other employees. The engagement letter between Plaintiff and Plaintiff's counsel provides that Plaintiff's counsel will (at a minimum) bill at this rate against any settlement, and $250 per hour is the minimum rate that Mr. Hilton charges for new billable matters. (Hilton Decl. at ¶ 17.) Further, Mr. Hilton and Mr. Parker were both formerly associates at Jones Day, where a court awarded $325 to $350 per hour for their work. (Attorneys' Fees Order ("Exhibit G").)

Since leaving Jones Day in September 2017, Mr. Hilton has had no shortage of work, and his average rate for billable hour matters has been $294 per hour. (Hilton Decl. at ¶ 16.) As detailed in Mr. Hilton's declaration, he has won various awards. (*Id.* at ¶ 12.) Mr. Parker's average rate for billable hour matters since he joined the firm in April 2018 has been $341.49 per hour. (*Id.* at ¶ 24.) Lastly, five years ago, the average billing rate for a lawyer practicing "Consumer Law" in Ohio was $300. (Economic Survey ("Exhibit H").) Therefore, the requested $250 per hour for attorney time is reasonable. The request for $100 per hour for the work of Scarlett Tucker, a summer associate, is also reasonable. *See, e.g.*, *Brown v. Halsted Fin. Servs., LLC*, No. 3:12-cv-308,

2013 U.S. Dist. LEXIS 26144, at *6 (S.D. Ohio Feb. 26, 2013) (finding that "$250 per hour for lawyers and $100 per hour for paralegals and law clerks are reasonable rates.").

Plaintiff's counsel's time entries are also reasonable. For instance, counsel spent less than six hours total conducting initial fact investigation and drafting the Complaint. *Compare Whaley*, 2016 U.S. Dist. LEXIS 146202, at *6 (finding 8.2 hours conducting fact investigation and drafting pleadings was reasonable). Meanwhile, time incurred preparing this memorandum is simply the result of Defendant's litigation strategy.

2. *Plaintiff Should Receive $10,500 for Violations of the TCPA.*

Plaintiff is entitled to $500 per violation of 47 U.S.C. § 227(b)(3)(B), and this amount should be trebled because the violations were "willful" or "knowing." 47 U.S.C. § 227(b)(3)(B)-(C). Plaintiff has substantiated at least seven calls, and she has alleged that ARS used an autodialer. Based on this record, the Court should award Plaintiff damages for the seven calls placed in violation of 47 U.S.C. § 227(b)(3)(B). An award of $500 per violation under § 227(b)(3)(B) is "mandatory." *Charvat v. NMP, LLC*, No. 2:09-cv-209, 2012 U.S. Dist. LEXIS 139505, at *14 (S.D. Ohio Sep. 27, 2012). Therefore, Plaintiff is entitled to at least $3,500 ($500 multiplied by seven violations).

Moreover, the Complaint also alleges that ARS made multiple calls using a pre-recorded voice, *see, e.g.*, Compl. ¶¶ 14, 54, and ARS's own call records substantiate that it made at least three such "Voice Broadcasts" to Plaintiff's cell phone. (Exh. E.) If the Court for any reason holds that Plaintiff should not be awarded damages for all seven autodialed calls, then Plaintiff should at least be awarded statutory damages for the three instances of ARS using pre-recorded voices.

[ 15 ]

The Court should also treble this amount for ARS's "willful" and "knowing" conduct. 47 U.S.C. § 227(b)(3)(C); *see also* Compl. ¶ 56 (alleging willful and knowing conduct). For instance, ARS's conduct was undoubtedly "willful" and "knowing" with respect to the pre-recorded voice messages. Further, ARS's conduct merits trebled damages because the tone of its pre-recorded voice messages was ominous and designed to incite fear in the consumer. For instance, one voicemail message states:

> HI, THIS IS AN IMPORTANT MESSAGE FOR [pause] MEGAN MILLER. IF THIS IS NOT [pause] MEGAN MILLER, PLEASE DISCONTINUE LISTENING TO THIS MESSAGE NOW. BY REMAINING ON THIS CALL YOU ARE ACKNOWLEDGING THAT YOU ARE IN FACT [pause] MEGAN MILLER. AGAIN, IF YOU ARE NOT [pause] MEGAN MILLER PLEASE DISCONTINUE LISTENING TO THIS MESSAGE. THIS IS A CALL FROM ABILITY RECOVERY SERVICES, WHICH IS A DEBT COLLECTOR. THIS CALL IS AN ATTEMPT TO COLLECT ON A DEBT BY A DEBT COLLECTOR, ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. MEGAN MILLER, PLEASE CALL ME, [garbled] BACK AT ONCE. XXX-XXX-1892, EXTENSION 245. THANK YOU.

(Hilton Decl. at ¶ 8.)

Defendant also "willfully" and "knowingly" uses an autodialer because it proudly proclaims that it does so on its website. Thus, the Court should award Plaintiff treble damages in the amount of $10,500.

    3.    *Plaintiff Should Receive $2,200 under the CSPA Plus Attorney Fees.*

As detailed in the Complaint, the CSPA (R.C. 1345.02 *et seq.*) entitles Plaintiff to additional statutory damages under state law. (Compl. ¶¶ 66–72.) Statutory damages under the CSPA are set at $200 per violation—however, each violation must cause a

[ 16 ]

"separate and distinct harm" to merit its own $200 award. *Charvat v. NMP, Ltd. Liab. Co.*, 656 F.3d 440, 452 (6th Cir. 2011).

**CSPA Claims Based on the FDCPA.** Plaintiff should be awarded $800 under the CSPA for four "separate and distinct" harms suffered as the result of various FDCPA violations. Here, Plaintiff suffered at least four distinct harms: (1) Plaintiff was harassed by phone calls; (2) Plaintiff was misled as to the amount and character of the debt, and ARS attempted to collect an amount not owed; (3) Plaintiff was threatened with illegal actions with respect to her credit report; and (4) ARS misrepresented Plaintiff's legal rights to her. Thus, Plaintiff is entitled to $800.

**CSPA Violations Based on the TCPA.** Plaintiff has substantiated at least seven violations of the TCPA's prohibition on autodialers and pre-recorded messages. Thus, Plaintiff is entitled to $1,400 for CSPA violations predicated upon TCPA violations.

Plaintiff should also receive her attorney fees for time spent pursuing her CSPA claims. Under the CSPA, the court "may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed and limited pursuant to section 1345.092 of the Revised Code." R.C. 1345.09(F). The calculation for attorney fees under both the FDCPA and the CSPA follows the "lodestar" method, except that under the CSPA, the Court may also award an enhancement or multiplier. *Bittner v. Tri-Cty. Toyota, Inc.*, 58 569 N.E.2d 464, 466–67 (1991); *Davis v. Mut. Life Ins. Co. of New York*, 6 F.3d 367, 383 (6th Cir. 1993). Plaintiff's counsel does not presently argue that any multiplier is appropriate, given the low number of hours it has committed to this case.

[ 17 ]

Importantly, however, because the CSPA claims were predicated in part on the TCPA claims, Plaintiff is entitled to recover fees for *all* work performed in this case. *Hamilton v. Ball*, 7 N.E.3d 1241, 1264 (Ohio Ct. App. 2014) ("[W]here claims present a common core of facts and related legal theories, and where those different theories of recovery are not severable, it is permissible for the trial court to treat the total number of hours expended on all claims as reasonably expended hours.").

### III. CONCLUSION.

For the above reasons, Plaintiff moves this Court to enter a default judgment against ARS in the amount of $21,052, representing $1,000 under the FDCPA; $10,500 in under the TCPA; $2,200 under the CSPA; and $7,352 in attorney fees.

Respectfully Submitted,

Dated: June 6, 2018

By: s/ Jonathan Hilton

Jonathan Hilton (0095742)
HILTON PARKER
10400 Blacklick-Eastern Rd NW, Ste. 110
Pickerington, OH 43147
Tel: (614) 992-2277
Fax: (614) 427-5557
jhilton@hiltonparker.com