# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| MEGAN MILLER, | Case No. 1:18-cv-266 |
| Plaintiff, | Judge Timothy S. Black |
| vs. | |
| ABILITY RECOVERY SERVICES, LLC., | |
| Defendant. | |

## ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

This civil case is before the Court on Plaintiff's motion for default judgment (Doc. 7) and supplemental memorandum (Doc. 8).

## I. BACKGROUND

On April 14, 2018, Plaintiff Megan Miller commenced the instant civil action against Defendant Ability Recovery Services, LLC ("ARS"), pursuant to the Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. § 1692, *et seq.*), the Telephone Consumer Protection Act ("TCPA"), (47 U.S.C. § 227, *et seq.*), and the Ohio Consumer Sales Practices Act ("OCSPA") (Ohio Rev. Code § 1345.01 *et seq.*). (Doc. 1).

Plaintiff alleges that in December 2017, ARS, a third-party debt collector, first contacted her regarding recovery in the amount of $226.50. Defendant subsequently provided purported verification of the debt, which verification showed only $217.50 owed. Plaintiff informed Defendant that she had already paid the debt, but Defendant continued to call her cellular telephone every few days, from different telephone

numbers, for several weeks. Plaintiff further asserts that Defendant left pre-recorded voicemail messages and utilized an Automated Telephone Dialing System, absent Plaintiff's consent. Plaintiff states that Defendant threatened to harm her credit if she did not pay Defendant the amount sought, regardless of whether or not the debt had already been satisfied. Subsequently, Defendant also claimed to have already reported the debt to credit bureaus and told Plaintiff to contact Defendant if she wished to fix her credit report. Plaintiff further asserts that Defendant erroneously informed her that she bore the burden to prove the debt had been satisfied.

Thus, Plaintiff claims to have suffered harm as a result of Defendant's actions, including but not limited to invasion of privacy, aggravation resulting from collection calls, emotional distress, confusion as to her legal rights, and increased usage of her telephone services.

## II. STANDARD OF REVIEW

Following the Clerk's entry of default pursuant to Fed. R. Civ. P. 55(a), a party may seek entry of a default judgment by the Court. Applications for default judgment are governed by Fed. R. Civ. P. 55(b). In determining whether to enter a default judgment, the Court should consider: "1) possible prejudice to the plaintiff; 2) the merits of the claims; 3) the sufficiency of the complaint; 4) the amount of money at stake; 5) possible disputed material facts; 6) whether the default was due to excusable neglect; and 7) the preference for decisions on the merits." *Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002) (citing *Eitel v. McCool,* 782 F.2d 1470, 1472 (9th Cir. 1986)).

2

However, "[a] default judgment on well-pleaded allegations establishes only defendant's liability; plaintiff must still establish the extent of damages." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (quoting *Kelley v. Carr,* 567 F.Supp. 831, 841 (W.D. Mich. 1983)).

As to damages, "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing." Fed. R. Civ. P. 55(b)(1).

"In all other cases, the party must apply to the court for a default judgment," and "[t]he court may conduct hearings or make referrals … [to] determine the amount of damages …." Fed. R. Civ. P. 55(b)(2). Thus, Rule 55(b)(2), "by its terms, *allows* but does not *require* the district court to conduct an evidentiary hearing." *Vesligaj v. Peterson*, 331 F. App'x 351, 354–55 (6th Cir. 2009) (citing *Fustok v. ContiCommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989)) (emphasis added). The Court may rely on affidavits and documentary evidence to determine the issue of damages. *P&G Health & Longterm Disability Plan v. Molinary*, No. 1:18-CV-283, 2019 WL 358936, at *2 (S.D. Ohio Jan. 29, 2019).

### III. ANALYSIS

**A. Liability**

Defendant ARS is in default, as evidenced by the Clerk's Entry of Default. (Doc. 6). Accordingly, the factual allegations of the Complaint (Doc. 1), except those related to the amount of damages, are deemed as true. *Antoine*, 66 F.3d at 105.

Upon review of the record, the Court finds that default judgment is warranted. Defendant's failure to respond to the Complaint, the application for entry of default, or the motion for default judgment has made it clear Defendant does not intend to defend this action. Indeed, as detailed in Plaintiff's motions, this is not the first or only case in which ARS has failed to respond to similar claims. (Doc. 7, Ex. B). Moreover, the communications between Plaintiff's counsel and Defendant clearly indicate that Defendant was well-aware of the pending action. (Doc. 8, Exs. 2, 4, 5, 6). Plaintiff's counsel appears to have attempted to negotiate a resolution with Defendant in good faith, but to no avail. (*See id.*) Thus, Plaintiff is left with no other recourse but the present action and faces significant potential harm if the Court were to deny default judgment.

The unchallenged factual allegations set forth in the Complaint sufficiently state claims against Defendant for violating the FDCPA (15 U.S.C. §§ 1692d(5), 1692e(2), (5), (8), (10), and 1692f), the TCPA (47 U.S.C. § 227(b)(1)(A)(iii)), and the OCSPA (Ohio Rev. Code § 1345.02(A)). Accordingly, default judgment as to liability is appropriate.

**B. Damages**

Plaintiff seeks $1,000 in statutory damages under the FDCPA, plus attorney fees; $500 in statutory damages per call under the TCPA, trebled for willful or knowing violations; and $200 per call plus attorney fees under the OCSPA. (Doc. 7).

*1. FDCPA*

The Court may award statutory damages of up to $1,000 for a violation of the FDCPA. 15 U.S.C. § 1692k(a)(2)(A).

Here, the Court finds an award for the full amount of $1,000 appropriate, based on "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." *See id.* § 1692k(b)(1).

   2. *TCPA*

Plaintiff also moves for an award of $10,500.00 under the TCPA. (Doc. 7 at 16-17).

The TCPA proscribes the use of an automatic telephone dialing system or an artificial or prerecorded voice to call a cellular telephone for non-emergency purposes and without prior consent, "unless such call is made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii).[1] The TCPA permits an award of $500.00 in damages per violation. 47 U.S.C. § 227(b)(3)(B). Further, it is within the Court's discretion to award treble damages if the Court finds the violations were committed willfully or knowingly. 47 U.S.C. § 227(b)(3).

Here, Plaintiff's uncontested allegations and documentary evidence show that Defendant, without obtaining prior consent, used an automatic dialing system or pre-recorded voice, or both, to make seven calls to Plaintiff's cellular telephone. (Doc. 7, Ex. E). Thus, at a minimum, Plaintiff is entitled to $3,500.00 in damages under the TCPA.

---

[1] The exemption constitutes an affirmative defense and thus Defendant bears the burden of proof. *See Ayers v. Receivables Performance Mgmt., L.L.C.*, No. 2:15-CV-12082, 2016 WL 5402962, at *6 (E.D. Mich. Sept. 28, 2016) (collecting cases). Plaintiff "only need[s] to plead facts showing that (1) a call was placed to a cell or wireless phone, (2) by the use of any automatic dialing system and/or leaving an artificial or pre-recorded message, and (3) without prior consent of the recipient plaintiff." *Id.* (citations omitted).

Additionally, given the pendency of similar cases against Defendant ARS, filed in various jurisdictions, Defendant had ample notice of the TCPA's proscriptions. (Doc. 7, Ex. B). Moreover, Defendant ARS was undoubtedly aware of its own practice of using automatic dialing systems and pre-recorded voice calls. (See *Id.*, Exs. B, F). In short, Defendant ARS's persistent use of violative practices against debtors was both knowing and willful, and thus treble damages are warranted.

### 3. OCSPA

Plaintiff also seeks an award of $2,200.00 in statutory damages under the OCSPA. (Doc. 7 at 17-19).

Pursuant to Ohio Rev. Code § 1345.02(A), "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." For any such violation, "the consumer may … recover the consumer's actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages." Ohio Rev. Code § 1345.09(A). If, however, the violation was an act or practice committed after an Ohio state court had already deemed the conduct to violate § 1345.02, "the consumer may … recover … three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages." Ohio Rev. Code § 1345.09(B); *see also Ferron v. Dish Network, L.L.C.*, 961 N.E.2d 705, 707-08 (Ohio Ct. App. 2011). However, "Ohio courts have limited the recovery of statutory damages when multiple violations occur in the same transaction or cause the same injury." *Charvat v. NMP, LLC*, 656 F.3d 440, 451

(6th Cir. 2011) (collecting cases).  Thus, Plaintiff is entitled to damages under the OCSPA for violation resulting in "separate and distinct" harms.  *Id*.

Here, Plaintiff asserts that Defendant ARS's violation of the FDCPA results in four distinct harms constituting remediable violations of the OCSPA: "(1) Plaintiff was harassed by phone calls; (2) Plaintiff was misled as to the amount and character of the debt, and ARS attempted to collect an amount not owed; (3) Plaintiff was threatened with illegal actions with respect to her credit report; and (4) ARS misrepresented Plaintiff's legal rights to her."  (Doc. 7 at 18).  Accordingly, Plaintiff seeks statutory damages in the amount of $200.00 for each of the four violations, amounting to a total of $800.00 for the FDCPA-related violations.  (*Id*.)  Plaintiff also seeks an additional $200.00 for each of the seven calls made in violation of the TCPA, for a total of $1,400.00.  (*Id*. at 18-19).  Accordingly, Plaintiff asserts that her combined damages under the FDCPA and the TCPA amount to $2,200.00.  (*Id*.)  The Court agrees that Plaintiff is entitled to damages under the OCSPA, but finds Plaintiff's computation to be in error.

Specifically, Plaintiff asserts that a violation of the FDCPA or TCPA is, in and of itself, a violation of OCSPA.  (Doc. 1 at 10-12; Doc. 7 at 17-19).  The Court disagrees with Plaintiff's oversimplification.  *See Charvat* at 450-51 (noting that Ohio courts have found some, <u>but not all</u>, TCPA violations to also constitute unfair or deceptive practices under the OCSPA); *see also Edwards v. McCormick*, 136 F. Supp. 2d 795, 806 n.13 (S.D. Ohio 2001) ("Plaintiffs would have this Court find that any violation of the FDCPA is *per se* a violation of the OCSPA … [but] Ohio courts have not spoken in unison on the issue").  Notably, "delivering a prerecorded message without prior express consent, in

7

violation of [the TCPA], is not, by itself, a violation of the OCSPA." *Charvat* at 450 (citing *Culbreath v. Golding Enters., L.L.C.*, 872 N.E.2d 284 (Ohio 2007)). However, the content or circumstances of that same prerecorded message may indeed constitute one or more violations of the OCSPA. *Id.* at 451. Thus, assessing "recovery on a per-call basis is too narrow of a view of the OCSPA." *Id.*

Here, relying upon Plaintiff's uncontested facts, and based on the evidentiary record, the Court finds that one of more of the calls resulted in three separate and distinct harms under the OCSPA, including: (1) deceiving the consumer by threatening to take, and stating that it had taken, impermissible actions; (2) deceiving the consumer as to the amount of the debt to be collected; and (3) deceiving the consumer by providing false information regarding the consumer's rights and obligations under the law.[2] *See Edwards v. McCormick*, 136 F. Supp. 2d 795, 806 (S.D. Ohio 2001) ("[Ohio court] found knowingly misstating the law with respect to the consumer's obligations to the creditor, as well as the exaggeration of remedies available to the creditor and the consequences to the consumer of nonpayment, to be deceptive"); *Taylor v. First Resolution Invest. Corp.*, 72 N.E.3d 573, 598 (Ohio 2016) (holding that claim may be brought under OCSPA for creditor's attempt to collect an amount in excess of what creditor is entitled).

---

[2] The Court cannot conclude that merely placing several telephone calls in an effort to collect a debt violates OCSPA. *McIntosh v. Controlled Credit Corp.*, No. 1:17-CV-009, 2018 WL 4761456, at *6-7 (S.D. Ohio Sept. 30, 2018) (holding that conduct aimed at collecting a debt, even if in error, is not, in and of itself, "conduct that the [O]CSPA was designed to guard against, such as making false statements of fact, false statements about what will happen if the consumer fails to satisfy the claim, or misrepresentations about the law"). To the extent that the issue is actually placing the calls to collect a debt that had already been paid, the conduct falls under the Court's third identified category of harm, *i.e.*, "deceiving the consumer … regarding [her] … obligations under the law."

8

Thus, Plaintiff is entitled to $200.00 statutory damages each time any of these harms occurred.

Based on Defendant ARS's own call logs, Plaintiff has substantiated seven distinct calls made to her telephone. (Doc. 7, Ex. E). However, the Court cannot conclude that all three harms occurred during each of the seven telephone calls. As an initial matter, Defendant ARS's call logs show that only five of the calls are marked as "Answered." (*Id.*) And only three calls out of seven lasted for more than three seconds.[3] (*Id.*) More significantly, however, the dates of the allegations on which the OCSPA violations are predicated do not match any of the dates on the call logs. (*Compare* Doc. 1, ¶¶ 7-24, *with* Doc. 7, Ex. E).

Relying upon Plaintiff's uncontested facts, and based on the evidentiary record, the Court concludes that six violations of the OCSPA are supported.

Specifically, the Complaint alleges that, "[o]n **one** occasion," Defendant made misrepresentations regarding Plaintiff's obligation to pay a satisfied debt and threatened to harm her credit if she did not comply. (Doc. 1, ¶¶ 19-20) (emphasis added).[4] Thus,

---

[3] Defendant ARS's call log provides durations of the calls (listed chronologically) as follows: 00:00, 00:03, 03:09, 02:15, 00:01, 00:41, and 00:03. (Doc. 7, Ex. E). The first call is marked as a "Hangup." (*Id.*) The second call is listed as "Timeout." (*Id.*) The remaining five are all marked as "Answered." (*Id.*)

[4] Although Plaintiff fails to specify, it appears that the misrepresentation regarding Plaintiff bearing the burden to prove payment of the debt occurred in the course of the same single conversation. (*Id.* at ¶ 21). As deceit regarding Plaintiff's burden of proof is the same harm as deceit regarding her obligation to pay the satisfied debt (*i.e.*, deceiving Plaintiff regarding her legal rights and obligations), it would not constitute a separate harm in this context.

9

these allegations constitute two violations (*i.e.*, one for each separate and distinct harm that occurred on that one occasion).

On a separate occasion, Defendant again misled Plaintiff as to her legal rights and obligations by informing her that she was required to prove satisfaction of the debt. (*Id.* at ¶ 21). This constitutes one additional violation.

The Complaint further specifies that on February 22, 2018 and March 2, 2018, Defendant misrepresented the amount of the debt and attempted to collect more than the amount Plaintiff originally owed. (*Id.* at ¶¶ 11, 23). Although the same harm is at issue, each repeated occurrence constitutes a new violation, for a total of two.

Finally, the Complaint states that on March 2, 2018, Defendant made a misrepresentation regarding reporting Plaintiff's allegedly unpaid debt. (*Id.* at ¶ 23). Thus, this constitutes one additional violation.

The Court finds six total violations of the OCSPA. Accordingly, Plaintiff is entitled to statutory damages in the amount of $1,200.00

### 4. Attorney's Fees

Finally, Plaintiff seeks a total of $9,587.00 in attorney's fees, as authorized under the FDCPA and the OCSPA. (Docs. 7, 8).

"The FDCPA mandates the award of 'a reasonable attorney's fee' and costs to a prevailing party." *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 446 (6th Cir. 2009); 15 U.S.C. § 1692k(a)(3). Also, pursuant to the OCSPA, "[t]he court may award to the prevailing party a reasonable attorney's fee … [if Defendant] has knowingly committed an act or practice that violates this chapter." Ohio Rev. Code § 1345.09(F)

"The starting point for determining the amount of a reasonable attorney fee is the 'lodestar' amount, which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). "Where the party seeking the attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Id*. at 552 (citing *Pennsylvania v. Del. Valley Citizens Council for Clean Air,* 478 U.S. 546, 564 (1986)). "A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Vill. of Sebring,* 36 F.3d 517, 533 (6th Cir. 1994). The "prevailing market rate [ ] in the relevant community," is a useful indication of what constitutes a reasonable rate. *Dowling* at 447 (quoting *Blum v. Stenson,* 465 U.S. 886, 895 (1984)). The "prevailing market rate" is defined as "that rate which lawyers of comparable skill and experience can reasonably expect to command." *Id*. (quoting *Adcock–Ladd v. Sec'y of Treasury,* 227 F.3d 343, 350 (6th Cir. 2000)).

Here, Plaintiff's total fees of $9,587.00 represent $7,352.00 incurred as of the date of the motion for default judgment (Doc. 7), as well as $2,235.00 incurred subsequently as Plaintiff's counsel attempted to resolve the matter with ARS (Doc. 8). Plaintiff's counsel requests an hourly rate of $250 for attorney time and $100 per hour for all other employees, having expending a total of 36.26 hours and 5.22 hours of each respectively on this case. (Doc. 7, Ex. I; Doc. 8, Ex. 3).

11

Given the nature of the case and in light of the prevailing market rates for similar work completed by comparable attorneys in this community, the Court finds the rate and hours expended reasonable. The Court further finds that an award of attorneys fees is appropriate pursuant to the FDCPA. Moreover, the Court finds that Plaintiff is also entitled to reasonable attorney's fees under the OCSPA, in light of Defendant ARS's knowing acts in violation of the statute. Ohio Rev. Code § 1345.09(F).[5] Accordingly, the Court awards attorney fees in the full amount of $9,587.00.

## IV. CONCLUSION

Based upon the foregoing, Plaintiff's motion for default judgment (Doc. 7) and supplemental memorandum (Doc. 8) are **GRANTED**. Specifically:

1. Plaintiff is granted default judgment;

2. Plaintiff is awarded **$22,287.00**, representing $1,000.00 in statutory damages for violation of the FDCPA; $10,500.00 in damages for violation of the TCPA; $1,200.00 in statutory damages under the OCSPA; and $9,587.00 in attorneys' fees.

3. The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

Date:   3/15/19                                           *s/ Timothy S. Black*
                                                          Timothy S. Black
                                                          United States District Judge

---

[5] Plaintiff's counsel is not seeking a fee multiplier in this case. (Doc. 7 at 18).